**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

DANIEL McCLOUD,
              **Movant,**

-vs-                                             **Case No. A-09-CA-454-SS**
                                                         **[No. A-08-CR-026(1)-SS]**
UNITED STATES OF AMERICA,
              **Respondent.**

_____

## **O R D E R**

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Petitioner Daniel McCloud ("Petitioner")'s Motion to Vacate, Set Aside, or Correct his Sentence under 28 U.S.C. § 2255 [#39], and Respondent the United States of America (the "Government")'s response thereto [#46]. Having considered the foregoing pleadings, the case file as a whole, and the applicable law, the Court enters the following opinion and order.

### **Background**

In February of 2008, Petitioner was charged in a one-count indictment with bank robbery in violation of 18 U.S.C. § 2113(b). *See* Indict. [#1].[1] On March 27, 2008, a Federal Public Defender from the Austin Division, Mr. William Ibbotson, was appointed to represent Petitioner. See Mar. 27, 2008 Order [#10]. On April 17, 2008 Petitioner entered a plea of guilty pursuant to a plea agreement. On June 17, 2008, the Government filed a sentencing memorandum requesting the Court impose an upward variance. Sent. Memo. [#32]. The United States Probation officer in Petitioner's case had determined Petitioner was a career offender and had calculated the advisory guidelines

---

[1] All docket numbers refer to the docket in Petitioner's criminal case, Cause No. A-08-CR-026(1)-SS.

based on an adjusted offense base of 21 with a criminal history of VI, to a term of 77 to 96 months. *See* June 20, 2008 Order [#37] at 1. However, Petitioner's counsel objected to the calculation on the basis an offense under 18 U.S.C. § 2113(b) is not a "crime of violence." *Id.* The Court agreed. *Id.* (citing *United States v. Dentler*, 492 F.3d 396 (5th Cir. 2007)). Thus, the advisory guideline range in Petitioner's case was properly calculated as 2 to 8 months. However, the Court also recognized a conviction under 21 U.S.C. § 2113(a) would have resulted in an advisory guideline range of 51 to 63 months based on an adjusted offense level of 20 and a criminal history of IV. *Id.* The Court was convinced a guideline sentence in Petitioner's case would not be a reasonable sentence, and therefore sentenced Petitioner pursuant to 18 U.S.C § 3553(a). *Id.* at 1-2. Thus, on June 18, 2008, the Court sentenced Petitioner to a 60-month term of imprisonment (to be served consecutively to the 60-month term of imprisonment the Court imposed on count one, and the concurrent 24-month term of imprisonment imposed on count three, as a result of a revocation in Cause No. A-96-CR-072(14)-SS, for a total of 120 months), followed by a three-year term of supervised release, and ordered a $100 mandatory assessment and restitution in the amount of $304. *See* J. & Comm. [#38] at 2-3.

In its written order, the Court indicated the 60-month sentence was based in part on the nature and circumstances of the offense in question, as Petitioner was on supervised release at the time he committed the offense, and had deliberately and intentionally gone to a Compass Bank in Austin, Texas in order to rob it, wearing a fake beard, glasses, and a hat. June 20, 2008 Order [#37] at 2. There were both customers and tellers in the bank at the time. *Id.* Petitioner went to the teller's window, demanded money, and warned the teller not to give him a "tracker." *Id.* He was not satisfied with the amount of money given him initially by the teller, and demanded more. *Id.* He

then walked swiftly out of the bank, went to the parking lot, and left in his vehicle. *Id.* Affidavits by a witness, a teller, and a police officer clearly indicate Petitioner's was a "violent" act. *Id.* Twelve to twenty police officers were involved in the subsequent investigation. *Id.*

Additionally, the Court noted Petitioner's criminal history is extensive. *Id.* He was convicted of aggravated robbery with a deadly weapon prior to 1994, and was using a 9mm pistol during that incident. *Id.* In 1996, he was convicted in the United States District Court in a major conspiracy involving the distribution of cocaine base, and for possession with intent to distribute cocaine base. *Id.* He was still under supervision for that crime at the time of the bank robbery. *Id.* In fact, the Court noted Petitioner had been under supervision or in custody continuously since 1992, and had committed three major felonies while under that supervision. *Id.* The Court determined a term of 60 months would protect the public from further crimes of the defendant, and would be consistent with both the nature and circumstances of the offense and the history and characteristics of the defendant. *Id.*

Petitioner did not file a direct appeal, presumably because he (or his attorney) was aware of the very real fact that a reversal of Petitioner's case on appeal would have allowed the United States Attorney to supersede the indictment in Petitioner's case. It was clear to all familiar with the case that the Assistant United States attorney had made a mistake in indicting Petitioner under 18 U.S.C. § 2113(b), and had compounded that mistake in negotiating the plea agreement in this case. Thus, an appeal—even if it did end in a reversal of Petitioner's sentence—would no doubt have been detrimental to Petitioner's interests, as it would have given the Government the opportunity to supersede Petitioner's indictment.

## Issues Presented

In his motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, Petitioner claims he received ineffective assistance of counsel for the following reasons: (1) he asked his attorney to file a direct appeal, but his attorney did not do so; (2) his attorney failed to move for a continuance of his sentencing when it was reset for an earlier date than originally scheduled, although his attorney knew "multiple character witnesses...were coming from locations around the country for [the] original court date"; and (3) he received an unreasonable sentence. *See* Pet. [#39].

## Applicable Law

### I. § 2255 Standard

Generally, there are four grounds upon which a defendant may move to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255: (1) the imposition of a sentence in violation of the Constitution or the laws of the United States; (2) a lack of jurisdiction of the District Court that imposed the sentence; (3) the imposition of a sentence in excess of the maximum authorized by law; and (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). Section 2255 is an extraordinary measure; it cannot be used for errors that are not constitutional or jurisdictional if those errors could have been raised on direct appeal. *United States v. Stumpf*, 900 F.2d 842, 845 (5th Cir. 1990). If the error is not of constitutional or jurisdictional magnitude, the petitioner must show the error could not have been raised on direct appeal and would, if condoned, "result in a complete miscarriage of justice." *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994). In addition, a defendant who raises a constitutional or jurisdictional issue for the first time on collateral review must show both "cause" for his procedural default, and "actual prejudice" resulting from the error. *Placente*, 81 F.3d at 558.

## II. Ineffective Assistance of Counsel

### a. Legal Standard

The Sixth Amendment to the United States Constitution guarantees a defendant reasonably effective assistance of counsel at all critical stages of a criminal proceeding. *Cuyler v. Sullivan*, 446 U.S. 335, 3344 (1980). Thus, an allegation of ineffective assistance of counsel is a cognizable basis for collateral review. *Massaro v. United States*, 538 U.S. 500, 509 (2003). To establish ineffective assistance of counsel, a petitioner must allege and prove (1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This two-pronged test also applies when a petitioner alleges ineffective assistance of counsel in the context of a guilty plea, such as in the present case. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

To establish the "deficient performance" prong, a petitioner must show his attorney's errors were "so serious that his counsel was not functioning as the 'counsel'" the Sixth Amendment guarantees. *Id.* The attorney's conduct is reviewed with great deference, and there is a strong presumption that counsel has exercised reasonable professional judgment. *Lockhart v. McCotter*, 782 F.2d 1275, 1279 (5th Cir. 1986). To establish the "prejudice" prong, a petitioner must establish a reasonable probability that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A 'reasonable probability' is one sufficient to undermine confidence in the outcome of the proceeding." *Nixon v. Epps*, 405 F.3d 318, 324 (5th Cir. 2005) (citing *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990)). An attorney is not required to make futile objections, nor to press frivolous points. *Koch*, 907 F.2d at 527. The Fifth Circuit has held that "a failure to establish *either* requirement [of the *Strickland* test] necessarily

defeats the claim" of ineffective assistance of counsel. *Lincecum v. Collins*, 958 F.2d 1271, 1278 (5th Cir. 1992) (emphasis added).

### b. Counsel's alleged failure to pursue a direct appeal

Petitioner claims his counsel was ineffective because "I ask [sic] my attorney to appeal and he refused to do so. He stated 'I don't think it would be a good idea, don't do it.'" Pet. At 5. Petitioner does not further elaborate on this claim. Mr. Ibbotson, Petitioner's appointed counsel, denies his claim; he states in his sworn affidavit that he did discuss appeal options with Petitioner, and Petitioner ultimately agreed he did not want to file a notice of appeal. See Gov't.'s Resp. [#46] at Ex. A ("Ibbotson Aff."). Specifically, Mr. Ibbotson testifies he advised Petitioner he did not believe an appeal would be productive, as Petitioner's guideline range had initially been 51 to 63 months calculated for the crime of bank robbery, which is a crime of violence. But because Petitioner pled to a bank theft, "it was not a crime of violence under the categorical approach used to decide such matters, despite the actual underlying circumstances of the offense fitting within the scope of a bank robbery." *Id.* Mr. Ibbotson properly objected that the offense to which Petitioner pled was not a crime of violence, and the Court sustained the objection.

However, this did not prevent the Court from finding grounds to vary to the guideline range, particularly in light of Petitioner's criminal record and the fact he committed the offense while on supervised release. *Id.* Mr. Ibbotson testifies in his view, the Court's findings and its subsequent written order on sentencing were quite adequate to support the imposition of a 60-month sentence, and Mr. Ibbotson could see no basis for obtaining relief on appeal. *Id.* In short, Mr. Ibbotson understood Petitioner had received a highly favorable deal, and he did not want the Government to

-6-

have the opportunity to supersede the indictment, which may well have resulted in a longer sentence for Petitioner. He so advised Petitioner. *Id.* As Mr. Ibbotson's testimony shows, he did everything in his power to ensure Petitioner would be sentenced pursuant to the plea agreement, rather than having the Court reject it and give the Government the opportunity to supersede the indictment. *Id.* According to Mr. Ibbotson, Petitioner ultimately agreed with his assessment and did not request Mr. Ibbotson file an appeal. *Id.*

The Supreme Court of the United States has "long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (citations omitted). Furthermore, "when counsel fails to file a requested appeal, a defendant is entitled to [a new] appeal without showing that his appeal would likely have had merit." *Id.* (quoting *Peguero v. United States,* 526 U.S. 23, 28 (1999)). In other words, a failure to file a requested notice of appeal is *per se* ineffective assistance of counsel, with or without a showing the appeal would have merit. *Id.* at 483-86. Thus, the defendant must only demonstrate there is a reasonable probability that, but for counsel's failure, he would have timely appealed. *Id.* at 484, 486. The *Flores-Ortega* rule applies even where a defendant has waived his right to direct appeal and collateral review. *United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007).

Petitioner asserts he asked Mr. Ibbotson to file a notice of appeal on his behalf, and Mr. Ibbotson refused. Although the Government has presented the affidavit of Mr. Ibbotson, stating the allegation is untrue, the question of whether Petitioner did indeed instruct Mr. Ibbotson to file an

appeal comes down to a credibility determination. Thus, it is necessary to hold an evidentiary hearing on the issue.

### b.     Counsel's failure to move for a postponement of sentencing

Petitioner also claims Mr. Ibbotson's representation was deficient in that he failed to move for a postponement of the sentencing date after finding out Petitioner's sentencing date was moved from June 20, 2008 to June 18, 2008 less than a week before the sentencing. Petitioner claims Mr. Ibbotson knew multiple character witnesses were flying in to appear at his sentencing who could not be present on the earlier date.

In his affidavit, Mr. Ibbotson states the sentencing date was indeed changed on fairly short notice. Ibbotson Aff. at 1. But he "had already obtained letters from all of the witnesses that would have been present in court, and...had advised the Court that those witnesses would have been present had not the date changed." *Id.* Aware as he was that the Court always reads all the letters prior to sentencing, and that the Court understands some witnesses' ability to attend sentencing may be affected when the date is changed, Mr. Ibbotson "was not concerned about the date change" affecting Petitioner adversely. *Id.* Mr. Ibbotson also testifies he knew from prior experience this was not the sort of reason for which the Court would generally grant a continuance. *Id.* Furthermore, he notes that at sentencing the Court specifically commented on the number and quality of letters received on Petitioner's behalf. *Id.* (citing June 18, 2009 Tr. at 2). Petitioner's sister was present at the sentencing, and spoke on behalf of the family. *Id.* She explained the other family members would

have been present except for the date change, *see* June 18, 2009 Tr. at 18,[2] and she confirmed what she and others had told the Court in the letters. *Id.* Likewise, Petitioner's fiancee, who could not be present because she had given birth to their child the day before, passed on her comments through Petitioner's sister. *See* June 18, 2009 Tr. at 5. So did Petitioner's mother. *Id.* Other relatives wrote letters, which the Court was in possession of and had read prior to the sentencing. *Id.* at 2. Based on the foregoing, Mr. Ibbotson testifies he did not believe Petitioner was compromised by the late date change or Mr. Ibbotson's decision not to request a continuance. *See* Ibbotson Aff. at 1.

The Court finds Mr. Ibbotson's representation of Petitioner was not deficient in any way for failing to request a continuance of Petitioner's sentencing date. Strategically, Mr. Ibbotson wanted the sentencing to conclude as soon as possible. The Fifth Circuit has repeatedly admonished that attorneys should not be subjected to unrealistic standards and, when reviewing a § 2255 motion, "the acuity of hindsight is not our proper lens." *United States v. Faubion*, 19 F.3d 226 (5th Cir.1994). "Judicial scrutiny of counsel's performance must be 'highly deferential,' and the court must make every effort 'to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's alleged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *United States v. Harris*, 408 F.3d 186, 189 (5th Cir. 2005) (citations omitted). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* Furthermore, an attorney is not required to make futile objections, nor to press

---

[2]Petitioner's sister stated to the Court: "I want to also say that his family intended to be here. We all took out loans and credit cards and did everything necessary to be here. But when the date changed, no one was able to make it except me.... And so, there were several other people who wanted to be here but could not.... I'm just letting you know there would be others here."
    The Court responded: "I assume that by the letters." June 18, 2009 Tr. at 18-19.

frivolous points. *Koch*, 907 F.2d at 527. Had Mr. Ibbotson pressed for a continuance, he would have undoubtedly been pressing a frivolous point.

The Court also agrees with Mr. Ibbotson's experienced assessment that Mr. Ibbotsson's failure to request a continuance did not prejudice Petitioner in any way. Indeed, Petitioner does not even state what the missing character witnesses would have said that presumably would have helped him, or if they would have said anything not already contained in their letters to the Court. "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Buckelew v. U.S.*, 575 F.2d 515, 521 (5th Cir. 1978). "Where the only evidence of a missing witness's testimony is from the defendant, this Court views claims of ineffective assistance with great caution." *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001). Thus, even if Mr. Ibbotson's representation was somehow deficient in not asking for a continuance of the sentencing date—which it was not—Petitioner has not shown he was prejudiced in the slightest way by Mr. Ibbotson's failure to request the continuance. In spite of the fact he almost certainly would not have gotten a continuance, there is no evidence any witness would have said anything that would have changed the outcome of the sentencing, or that was not known by the Court at the time of sentencing.

The Court expressly stated at sentencing (and reaffirmed in its subsequent written order) the reason for the non-guideline sentence was Petitioner's criminal history, "the characteristics of what he did while he's on supervised release," and the need to protect the public from him. June 18, 2009 Tr. at 23. There were absolutely no circumstance under which the Court would have accepted the plea agreement and sentenced Petitioner to anything less than a total of 120 months, due to his

criminal history and his conduct while on supervised release. Certainly there was nothing his family or any other witness could have said that would have influenced the Court on this point, or caused Petitioner to be sentenced to a lesser amount of time.

Therefore, because Petitioner has not shown his counsel's performance was deficient, or any reasonable probability that, "but for counsel's unprofessional errors, the result of the proceeding would have been different," his petition is DENIED on this ground as well.

### d. Unreasonable Sentence

Finally, Petitioner claims he was denied ineffective assistance of counsel because he received what he categorizes as an "unreasonable sentence," in light of the fact his guideline range was two to eight months. Pet. at 8. Although Petitioner categorizes this claim as an ineffective assistance of counsel claim, his allegations have nothing to do with any alleged error in his counsel's conduct, but only with the sentence he received. Nor does he specifically allege any error on the part of the Court, or allege any facts at all to support his claim, and nowhere in the remainder of his petition does Petitioner revisit this issue, or provide the slightest allegation in support of it.

Petitioner's single vague, conclusory allegation on this ground does not provide a basis for relief under § 2255. *See, e.g., Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000); *United States v. Martinez*, 181 F.3d 627, 629 (5th Cir. 1999); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990). Even taking into account the fact *pro se* habeas corpus petitions must be construed liberally, mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue. *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989). Therefore, because Petitioner does not set forth the nature of any errors his counsel purportedly committed, or any resulting prejudice, the Court finds

the ineffective assistance of counsel claim alleged in Petitioner's final ground for relief is entirely conclusory and must be DENIED. There was simply no possibility the undersigned was going to sentence Petitioner to less than 60 months in this case (with the sentence running consecutively to the sentence in the revocation).

## Conclusion

In accordance with the foregoing:

IT IS ORDERED that Petitioner Daniel McCloud's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 [#39] is DENIED in part, as to the second and third grounds for relief, in accordance with the foregoing order.

IT IS FURTHER ORDERED that this case is SET for an EVIDENTIARY HEARING on the first ground for relief: the issue of whether Petitioner's counsel ignored a specific request to file a notice of appeal in this case.

Petitioner is expressly WARNED that the offense of perjury, or lying under oath, carries federal penalties including further incarceration beyond his present sentence. The Court will not hesitate to impose such penalties if the evidence so warrants.

IT IS FINALLY ORDERED that the evidentiary hearing will take place on **February 5, 2010**, at **2:00 p.m.** in Courtroom No. 2, United States Courthouse, 200 West Eighth Street, Austin, Texas.

SIGNED this the 16th day of December 2009.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE